NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DONNA BENSON and GRAHAM BENSON,<br><br>Plaintiffs,<br><br>v.<br><br>BIOMET, INC., BIOMET ORTHOPEDICS, LLC and DOES 1-10,<br><br>Defendants. | Civil Action No. 12-3618 (WJM)<br><br><br><br>OPINION |

**Falk, U.S.M.J.**

This matter comes before the Court upon the motion of plaintiffs Donna Benson and Graham Benson to stay proceedings (Docket Entry No. 12); and upon the motion of defendants Biomet, Inc. an Biomet Orthopedics, LLC to transfer venue to the United States District Court for the Eastern District of Washington pursuant to 28 U.S.C. § 1404(a). (Docket Entry No. 18). Both motions are opposed. The motions are decided on the papers submitted. Fed.R.Civ.P. 78(b). For the reasons set forth below, defendants' motion is **granted** and plaintiffs' motion is **denied as moot**.

# BACKGROUND

Plaintiffs Donna Benson ("plaintiff") and Graham Benson ( collectively "plaintiffs"), husband and wife, are citizens and residents of the State of Washington. (Docket Entry No. 1 ("Compl.") ¶ 4). Defendants Biomet, Inc. and Biomet Orthopedics, LLC ("defendants" or "Biomet") are Indiana companies with their principal place of business in Warsaw, Indiana. (Docket Entry No. 7 ("Answer") ¶¶ 5, 7). This is a product liability action wherein plaintiff Donna Benson alleges she suffered injuries as a result of being implanted with a hip replacement device manufactured by defendants; plaintiff Graham Benson claims loss of consortium. (Compl., ¶¶ 138-40).

Defendants are manufacturers of a hip replacement system known as $M^2a\text{-}38^{TM}$ ("hip system"). The hip system was designed and manufactured by defendants primarily at their facilities in Warsaw, Indiana. (Answer, ¶¶ 6, 8; Docket Entry No. 1, Ex. B, Declaration of Mark Moudy ("Moudy Decl."), ¶ 4). On January 16, 2006, plaintiff had a hip system implanted at a medical center in Washington. (Compl., ¶ 35) On January 14, 2010, plaintiff underwent a revision surgery to remove and replace the hip system. ( Id. at ¶¶ 36, 37). This surgery also was done in Washington. (Id. at ¶ 37).

Plaintiffs filed suit against the defendants on May 7, 2012 in the Superior Court of New Jersey. On June 15, 2012, defendants removed the case to the United States District

Court for the District of New Jersey based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] (Docket Entry No. 1).

On July 23, 2012, plaintiffs filed a motion to stay the proceedings pending resolution of a motion currently before the Judicial Panel on Multidistrict Litigation ("Panel") seeking establishment of a multi-district litigation ("MDL") coordinating all federal cases involving claims for injuries as a result of the implantation of hip replacement systems manufactured by defendants.[2] Plaintiffs contend that the "establishment of an MDL proceeding is almost certain since the Panel has established product liability proceedings with far fewer cases than are pending here."(Pl.'s Br. at 3). Plaintiffs further argue that a stay would promote judicial economy and that fairness considerations favor a stay. (Id. at 3-7). On August 6, 2012, defendants filed a motion to

---

[1]Originally, Biomet Fair Lawn, LLC and Biomet Fair Lawn, L.P. (collectively "Biomet Fair Lawn") were named as defendants. At the time the action was filed, Biomet Fair Lawn LLC was an Indiana limited liability company with its principal place of business in New Jersey. (Compl., ¶ 9). Biomet Fair Lawn, L.P. was converted to Biomet Fair Lawn LLC in 2008 and did not exist as a corporate entity at the time this action was commenced. (Docket Entry No. 1, Notice of Removal, ¶ 10). On June 21, 2012, defendants filed a motion to dismiss the complaint against Biomet Fair Lawn. (Docket Entry No. 8). On July 26, 2012, the action against Biomet Fairlawn was dismissed by joint stipulation of the parties. (Docket Entry No. 16).

[2]On June 27, 2012, plaintiffs in a products liability action pending in the Northern District of California filed a motion requesting that the Panel create an MDL for the Biomet M2a Magnum Hip Implant cases and transfer all actions involving the device ("MDL Motion") to either the Northern District of California or the Southern District of New York. (Docket Entry No. 12, Plaintiffs' Brief in Support of Motion to Stay ("Pl.'s Br.") at 2, and Ex. 2). Plaintiffs in the present case filed an Interested Party's Response and Brief in support of the MDL motion. (Id.). Plaintiffs contend that the MDL for the Biomet M2a Magnum should include their action involving the M$^2$a-38$^{TM}$. Plaintiffs maintain that the M$^2$a-38$^{TM}$ should be included because it is the "sister metal-on-metal hip implant...made by the same defendants, which is the predecessor device to the Magnum." (Pl.'s Br. at Ex. 2, n.1).

transfer venue pursuant to 28 U.S.C. § 1404(a). Arguing that the case has no connection to New Jersey, defendants point out that plaintiffs do not reside in New Jersey, experienced no alleged injuries within New Jersey, and have undergone no known medical treatment within the state. (Def.'s Br. at 2).³ Defendants further maintain that plaintiffs' "only ties to New Jersey appear to be that it is the location of their attorney, who has filed at least two other cases against [defendants] on behalf of [other] plaintiffs who similarly have no connection to [New Jersey]." (Id.).

## DISCUSSION

### A. Transfer of Venue Pursuant to § 1404(a)

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973); Cadapult Graphic Sys., Inc.v. Tektronix, Inc., 98 F.Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses....'" Ricoh Co.,

---

³Defendants contend that the only ties defendants have with New Jersey is through former defendant Biomet Fair Lawn. (Def.'s Br. at 2 and n. 1 infra). According to defendants, Biomet Fair Lawn is involved in only the preliminary stages of the manufacturing process, which is largely completed in Warsaw, Indiana. (Moudy Decl., ¶¶ 1, 4). Defendants speculate that Biomet Fair Lawn was originally joined in the case for the purpose of bringing the action in New Jersey. (Docket Entry No. 1, ¶ 9).

Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993)(quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case "might have been brought," and (2) that, in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp.2d 637, 643 (D.N.J. 2004)(citations omitted).

### B. Adequate Transferee Forum

The venue statute limits transfer to a district or division "where [the case] may have been brought." 28 U.S.C. § 1404(a). An action may be transferred to another district only if that district would be proper venue for the action and that forum is capable of asserting subject matter jurisdiction over the claims and in personam jurisdiction over the defendants. See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). Thus, as a threshold matter, this Court must consider whether this action could have been brought in the Eastern District of Washington.

An action where jurisdiction is founded on diversity may be brought only in (1) a judicial district where any defendant resides, if all reside in the same state, (2) a judicial district in which a substantial part of the events giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. See 28 U.S.C. § 1391(a).

Plaintiffs are residents of Washington. Plaintiff's hip surgery and her revision surgery were both performed in Washington. Plaintiffs' alleged injuries all occurred in that state. Thus, a substantial portion of plaintiffs' claim occurred in Washington and the case could have been brought there. See 28 U.S.C. § 1391(a)(2). Since defendants move to transfer this case to Washington, they have consented to the venue and jurisdiction of that district.

### C. **Balance of Interests**

The transfer provision identifies certain criteria for a court to consider: convenience of parties, convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a). The Third Circuit articulated a more comprehensive list of public and private concerns implicated by § 1404(a). Private concerns include but are not limited to: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995).

Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. Id. Thus, courts consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a

different forum." Id.; see Clark v. Burger King Corp., 255 F.Supp.2d 334, 337 (D.N.J. 2003). As a result, the "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp.2d 421, 428 (D.N.J. 2000)(citations omitted).

1. **Private Factors**

   (i) Where the Claim Arose

This is a product liability case. Most of the relevant conduct occurred in Washington. The hip system was shipped to Washington. (Def.s Br. at 5). Plaintiff's two surgeries–to implant the hip system and later to remove it–were performed in Washington. (Compl., ¶¶ 35-37). Plaintiff resides in Washington and her medical treatment related to her injuries occurred there. Thus a "substantial part of the events giving rise to the claim" occurred in Washington.

   (ii) Choice of Forum

A plaintiff's initial choice of venue is entitled to due consideration. Shutte v. Armco Stell Co., 431 F.2d 22, 24 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971) (citation omitted.) This is particularly true when the plaintiff selects their home forum. Sandvik, Inc., v. Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1987) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). However, this choice merits less weight when plaintiff initiates suit in a foreign forum. See Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 480 (D.N.J. 1993). Courts also give less weight to a plaintiff's forum

preference when she chooses a forum that has little connection to the operative facts of a case. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D.N.J. 1998); Honeywell, 817 F. Supp. at 481-482; Amer. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) (citations omitted). Because plaintiffs chose to initiate suit in a forum other than their home forum, and because New Jersey has no connection to the operative facts of this lawsuit, plaintiffs' choice of forum will be given little deference.

 (iii) Convenience of the Parties

Courts look to the relative physical and financial condition of parties in evaluating convenience. Santi v. Nat'l Business Records Management, LLC, 722 F. Supp. 2d 602, 608 (D.N.J. 2010). Plaintiffs are residents of Washington who allege to be suffering from "physical injury and bodily impairment, debilitating lack of mobility, conscious pain and suffering, and loss of earnings." (Compl., ¶ 45). Surely, Washington is more convenient for them than New Jersey. Defendants seek transfer to Washington, which demonstrates their view of convenience. Venue in New Jersey would be inconvenient for all parties.

 (iv) Availability of Witnesses and Access of Proof

Convenience of witnesses and access to sources of proof are important considerations in the 1404(a) analysis. See Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp.2d 321, 331 (D. Del. 2009). In deciding a motion to transfer, courts often distinguish between party and non-party witnesses. See Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 329 (D.N.J. 1995) (citations omitted). Party

witnesses carry less weight because they are presumed as willing to testify in either forum, even if it may be inconvenient. See Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp.2d 518, 534 n.19 (D.N.J. 2000). Non-party witnesses, on the other hand, may be compelled to attend only by the subpoena power of federal courts. See Fed. R. Civ. P. 45(b)(2) (limiting the federal subpoena power to within 100 miles of the courthouse). Compulsory process over non-party witnesses has been referred to as the single most important factor in a 1404(a) analysis. See Teleconference Sys., 676 F. Supp.2d at 333 (citing In re Genentech. Inc., 566 F.3d 1338 (Fed. Cir. 2009)); In re Consolidated Parlodel Litig., 22 F. Supp 2d 320, 324 (D.N.J. 1998) A forum's inability to reach non-party witnesses outside of this radius is therefore an important factor weighing against transfer. See LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp.2d 574, 590-591 (D.N.J. 2001.)

The non-party witnesses identifiable at this time only have a relationship to Washington. For instance, the two surgeons involved in the implantation and removal of the hip system at issue are in Washington. (Compl., ¶¶ 35, 37). Plaintiff's medical treatment occurred in Washington and therefore it is likely that additional witnesses, including treating physicians and other medical providers, are located in Washington, as are their records and files. Presumably some, if not all, of these witnesses would be within the subpoena power of the Eastern District of Washington. See Fed. R. Civ. P. 45(b)(2). By contrast, the District of New Jersey would have no power to compel their attendance. See id. Furthermore, there likely are no third-party witnesses identified in

New Jersey, as none of the operative facts occurred within the district. The inability of this Court to compel the attendance of witnesses located in Washington is a factor that weighs strongly in favor of transfer.

2. **Public Factors**

The public interest factors weigh in favor of transfer. Washington has a strong public interest in this case. All of the operative facts, including plaintiff's two surgeries and her alleged injuries, occurred in Washington. See Delta Air Lines, Inc. v. Chimet, S.P.A., 619 F.3d 288, 300 (3d Cir. 2010)( "'In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'"(quotations omitted)). By contrast, New Jersey has no real interest in hosting this matter. None of the plaintiffs live in New Jersey and none of the operative facts giving rise to the dispute occurred here. See e.g., Yocham v. Novartis Pharm. Corp., 736 F. Supp. 2d 875, 883 (D.N.J. 2010)(quoting Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615 (2007) ("To allow a life-long Michigan resident who received an FDA-approved drug in Michigan and alleged injuries sustained in Michigan to by-pass his own state's law and obtain compensation for his injuries in this State's courts completely undercuts Michigan's interests, while overvaluing our true interest in this litigation.")).

Because the operative facts giving rise to plaintiffs' cause of action occurred in Washington, Washington law will likely govern plaintiffs' claims. Yocham, 736 F.

Supp.2d at 881-83.  Allowing a Washington court to construe its own law weighs in favor of transfer.  See Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc., No. 09-3689, 2010 WL 715454, at *4 (D.N.J. Mar. 1, 2010).

Furthermore, jury duty should not be imposed on citizens of New Jersey absent an identified public interest in this forum.  See Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1990)("Jury duty is a burden that ought not to be imposed upon the people of the community with no connection to the litigation.").  Finally, because most of the parties, witnesses and evidence to this action are located in Washington, it would be more cost effective and economically judicious to proceed with the case there.

In sum, the transfer analysis is quite simple.  Washington has a strong connection to the case and New Jersey has none. Thus, as the private and public factors demonstrate, the Eastern District of Washington is the most appropriate and convenient forum.

# CONCLUSION

For the reasons stated above, defendants' motion to transfer (Docket Entry No.18) is **granted**. The Clerk's Office shall take no action on transfer of this case for 14 days. See L. Civ. R. 72.1(c)(1)(C). Since the case will be transferred, plaintiffs' motion to stay is **denied as moot**.[4] A separate Order accompanies this Opinion.

Dated: September 21, 2012

s/ Mark Falk
MARK FALK
United States Magistrate Judge

---

[4] As a result of this Court's resolution of defendants' motion, the Court need not reach the merits of plaintiffs' motion. Any requests to stay the action is more appropriately made to the transferee Court.